UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION


ADMIRAL AND MRS. JAMES LISANBY                                    PLAINTIFFS

V.                                              CIVIL ACTION NO. 1:05CV660-LTS-RHW

UNITED SERVICES AUTOMOBILE ASSOCIATION,                          DEFENDANTS
AND JOHN DOES 1-10


<u>MEMORANDUM OPINION</u>

Defendant United Services Automobile Association (USAA) has filed separate Motions to Dismiss, one [7] based on Fed. R. Civ. P. 12(b)(6) and the other [9] on Fed. R. Civ. P. 9(b). Plaintiffs filed a single response [13] to both, and have recently asked for leave [27] under Fed. R. Civ. P. 15(a) to file a First Amended Complaint  grounded on the Scheduling Order deadline of July 31, 2006, for Plaintiffs to amend the pleadings.

This case arises from Hurricane Katrina, which struck the Mississippi Gulf Coast on August 29, 2005.  The original Complaint was filed in the Chancery Court of Jackson County, Mississippi.  USAA removed this action [1] on federal question jurisdiction on the basis that Plaintiffs purchased a flood insurance policy from USAA under the National Flood Insurance Program.  The Plaintiffs also maintained  homeowners policy no. 00012 85 02 95A sold by USAA, which is attached to the Complaint as Exhibit "A."  Diversity jurisdiction is present, also, since Plaintiffs are adult resident citizens of Pascagoula, Mississippi, and USAA is organized and exists under the laws of the State of Texas, with its principal office and place of business in San Antonio.  The insurance coverage afforded by and sought under the homeowners policy satisfies the jurisdictional amount requirement.

USAA makes its requests for relief in spite of acknowledging that "factual issues exist as to what portion of the [Plaintiffs'] loss is wind-related damage (covered under the policy) and what portion of their loss is water damage (excluded under the policy)." [18] at 2.  Indeed, USAA recognizes that "if wind, not water, causes a loss, then that loss is covered . . . . USAA does not contend that the anti-concurrent cause provision in its policy permits it to deny covered wind-related damages to a given portion of the loss because excluded water damaged another portion of the loss."  *Id*. at 8.  *See also* USAA's Response [33] to Plaintiffs' Motion to Amend Complaint at paragraph 8 ("USAA has consistently acknowledged that the [Plaintiffs] have coverage for *all* wind related damages they can prove contributed to the destruction of their home.") (emphasis added).

Dismissal is proper only if it appears that the Plaintiffs can prove no set of facts in support of their allegations that would entitle them to relief.  *Conley v. Gibson*, 355 U.S. 41

(1957).  This determination must be made from the insurance contract sued upon read in its entirety as its provisions may apply to the particular circumstances surrounding the nature of the claims.  Consideration must be given, too, to the early stage at which this litigation sits.

DISCUSSION

The complexion of this cause of action has changed since its commencement.  The Plaintiffs' residence, shown before and after Hurricane Katrina in photographs attached to the original complaint as Exhibit "B," is demolished now, presumably as a result of some type of condemnation proceeding.  There have also been several opinions by this Court holding that the inundation that occurred during Katrina, characterized in the original complaint as "storm surge," is a type of flood that is subject to exclusions found in insurance policies.  This term is used with less frequency in the proposed First Amended Complaint.

Of course, USAA did not have the benefit of the newest allegations against it when it filed the motions to dismiss.  It is doubtful if much would change in the presentation offered.  The original complaint sets forth various interwoven and independent theories of recovery, among them equitable estoppel; indemnity (associated with the denial of loss of use/additional living expenses coverage giving rise to the payment of rent, and the costs of repairing/replacing the damaged residence); unjust enrichment/constructive trust; plain fraud; reformation based on equitable fraud (with a hint of mistake thrown in); and declaration of coverage.  In the proposed amendment, the latter two survive, with other counts renamed  and couched as negligent performance of undertaking; negligent misrepresentation; breach of contract; breach of duty of good faith and fair dealing; and bad faith and tortious breach of contract.

However, even the Motions to Dismiss ignore the following original assertions (simply denied in USAA's Answer and Defenses):

> Paragraph 12.  In selling the subject policy to Plaintiffs and subsequently collecting premiums under the policy, USAA, as Plaintiffs' insurer and agent, expressly and/or impliedly represented to Plaintiffs that they would have full and comprehensive coverage for any and all hurricane damage, including any and all damage proximately, efficiently, and typically caused by hurricane wind and "storm surge" proximately caused by hurricanes.

> Paragraph 23.  In fact, USAA's position that Plaintiffs' loss was a "flood event" is directly contrary to the position it took during Hurricane Georges in 1998.  Upon information and belief, after Hurricane Georges, USAA paid Plaintiffs $33,000.00 in insurance proceeds under the subject policy for damage caused by the water and storm surge resulting from Hurricane Georges.

Paragraph 12 is reworded in the proposed amendment so that it reads as follows:

> In marketing, presenting and selling the subject policy to Plaintiffs, USAA expressly and/or impliedly represented to Plaintiffs that they would have full and

comprehensive coverage for any and all hurricane damage under the subject policy.  USAA marketed, packaged, presented, and sold the subject policy to Plaintiffs in such a manner as to cause them to believe they had coverage under the subject policy for all damage that could be caused by a hurricane.  The marketing methods utilized by USAA to sell their policies to coastal residents with explicit and implicit assurances the policy and endorsements covered *all* damages caused by a landfalling hurricane were not contradicted and were in fact supported by the express terms of the policy.  In addition, the manner in which USAA's [sic] marketed, packaged, presented, and sold the subject policy to Plaintiffs was designed to nullify any terms of the subject policy that could exclude coverage for hurricane loss.

(Emphasis in original; *see also* revised Paragraph 14).

Paragraph 23 is repeated verbatim, only renumbered as Paragraph 26.  There is also a claim (new Paragraph 23) that "USAA similarly arbitrarily unjustifiably paid Plaintiffs for damage it determined to be *above* the waterline, disregarding any wind damage that may have occurred *below* the waterline before any storm surge arrived . . . ."  (Emphasis in original).

The Court is fully aware that the first page of Plaintiffs' Homeowners Policy Packet, under the heading "IMPORTANT MESSAGES," advises:

Your policy DOES NOT cover loss due to flood.  Coverage for flood is available through the National Flood Insurance Program.  Coverage for loss of household contents due to flood may be available at an additional cost.  For information about coverage for flood, you may call USAA Flood Operations . . . or you may contact the National Flood Insurance Program directly.

The Court also knows that the Plaintiffs maintained a flood policy issued by USAA under that governmental program.

Rule 9(b) of the Federal Rules of Civil Procedure dictates a heightened pleading standard when it comes to claims of fraud and mistake.  USAA points to several pieces of information that it feels are omitted on these subjects that deprive it of the ability to properly defend those allegations.  The usual remedy for this is not outright dismissal, but allowance of an amendment under Fed. R. Civ. P. 15.  At the same time, this Court is not interested in pleadings review "being a game where the plaintiff is permitted to file serial amendments until he finally gets it right."  *United States ex rel. Adrian v. Regents of the University of California,* 363 F.3d 398, 404 (5th Cir. 2004) (quoting the United States District Judge who correctly refused to allow a third amended complaint).  *See also United States ex rel. Williams v. Bell Helicopter Textron Inc*., 417 F.3d 450, 453-54 (5th Cir. 2005).

USAA could just as well have proceeded under Fed. R. Civ. P. 12(e).  *Cf . Sisk v. Texas Parks and Wildlife Dept.*, 644 F.2d 1056, 1059 (5th Cir. 1981) (in harassment and retaliation case, "[i]f a complaint is ambiguous or does not contain sufficient information to allow a responsive

pleading to be framed, the proper remedy is a motion for a more definite statement under Rule 12(e) F. R. C. P.") (citation omitted).  If the original complaint suffered such shortcomings as being contrary to Rule 9, they certainly did not prevent USAA from filing an Answer and Defenses or framing responses to the paragraphs targeted in the Motion to Dismiss dealing with Rule 9(b).

The proposed First Amended Complaint still contains a count entitled "Reformation of Insurance Contract Based on Equitable Fraud."  This Court has been unable to find a reported Mississippi insurance case identifying or defining "equitable fraud."  The closest it can come to the term is a party's claim, arising from an execution on a judgment, that the other party and his attorney had acted in a way that was "tantamount to fraud or the 'equitable equivalent' thereof." *Moseley v. Southern Colonel Mobile Homes, Inc*., 375 So. 2d 407, 410 (Miss. 1979).  Interestingly, the Mississippi Supreme Court held that an "impression" of a certain outcome "fell far short of reaching the standard of force and clearness required to establish fraud or the 'equitable equivalent' thereof." *Id*. at 411.  Indeed, if removal of the instant case from the Jackson County chancery court did not occur, there is a possibility that a request for a transfer to circuit court would have been made. *See*, *e. g.*, *Union National Life Insurance Co. v. Crosby*, 870 So. 2d 1175 (Miss. 2004).

Several issues not addressed by the pleadings and/or motions catch the Court's attention.  Two appearing in the complaints only have already been mentioned.  There is the matter of the marketing, presenting, and selling of the policy.  *Compare Clark v. State Farm Mutual Automobile Insurance Co.*, 725 So. 2d 779 (Miss. 1998) (no reliance on brochure received after policy issued and claim made for particular coverage), *with Vogel v. American Warranty Home Service Corp.*, 695 F.2d 877 (5th Cir. 1983) (estoppel where brochure became part of policy it accompanied).  The second is the prior claim from Hurricane Georges.  A third is that "USAA breached the subject policy by unfairly treating and adjusting Plaintiffs' claims for hurricane damage differently than the few other similar claims for hurricane damage that it did provide coverage for and pay under the subject policy." [27-2], paragraph 97.  Additionally, with the focus on the wind versus water cause of the damage, the Plaintiffs' homeowners policy also contains provisions for additional coverages associated with collapse and building ordinance or law.  There is the loss of use aspect of this claim, also.  The mention of these coverages does not indicate the Court's position on their validity.  According to USAA, it tendered to Plaintiffs payments for what was determined to be wind-related damages.  It is critical to keep in mind that "[a]n insurance carrier's duty to promptly pay a legitimate claim does not end because a lawsuit has been filed against it for nonpayment.  Put more bluntly, if you owe a debt the duty to pay does not end when you are sued for nonpayment of it." *Gregory v. Continental Insurance Co.*, 575 So. 2d 534, 541 (Miss. 1991) (a Hurricane Elena case). *See also Sobley v. Southern Natural Gas Co.*, 302 F.3d 325, 335 (5th Cir. 2002) (citing *Gregory*); *Tipton v. Nationwide Mutual Fire Insurance Co.*, 381 F. Supp. 2d 572, 580 (S.D. Miss. 2004) (same); *Eichenseer v. Reserve Life Insurance Co.*, 682 F. Supp. 1355 (N.D. Miss. 1988), *aff'd*, 881 F. 2d 1355 (5th Cir. 1989), *vacated on other grounds*, 499 U.S. 914 (1991).  Furthermore, all counsel are aware of the provisions of Fed. R. Civ. P. 11.  In short, further evaluation may be necessary in light of any changed circumstances.

Once again, this Court

cannot know at this juncture what the evidence will be.  It is likely that both the

> plaintiffs and [USAA] will present expert evidence on the issue of the cause or causes of the damage to the plaintiffs' property.  But it is my opinion, upon a thorough review of the terms of the [USAA] policy, that the damage attributable to wind and rain will be covered, regardless of whether an inflow of water caused additional damage that would be excluded from coverage.

*Tuepker v. State Farm Fire & Casualty Co.*, Civil Action No. 1:05cv559, Memorandum Op. at 8.

Put another way (unless the language of the insurance contract is altered by some other conduct):

> If the evidence were to indicate that part of the plaintiffs' losses were attributable to wind and rain (making them covered losses under the applicable provisions of the policy), and part of the loss were attributable to flooding (which is excluded from coverage), the determination of which was the proximate cause
> of the damage to the insured dwelling or to any given item of property (or the determination of the proportion of the damage to the insured dwelling or to any given item of property was proximately caused by each phenomenon) would be a question of fact under applicable Mississippi law . . . . Likewise, if the evidence shows that the damage occurred over time, so that wind damage preceded damage from a "storm surge," the wind damage would be a covered loss, even if subsequent damage from the "storm surge" that exacerbated the loss were properly excluded from coverage . . . .

*Id*. at 6 (citations omitted).

USAA has so much as conceded this approach in its arguments for dismissal and even in its response to the motion to amend the complaint.  Discovery as to the manner in which the claim was handled and the basis of the claim and claim decision will shed more light on the elements of proof required from both parties: for the Plaintiffs, that the cause of damage to or destruction of the insured property fits within the insuring language of the policy during the time it was in force; and, for USAA, since reliance on an exclusion is an affirmative defense on which it bears the burden, showing what portion of the loss was attributable to water damage and was thus within the water damage exclusion.

CONCLUSION

This Court's primary interest is to allow the parties a fair opportunity to present their respective cases in the pursuit of their desired results, but this can only be accomplished by proceeding within the rules and this Court's prior rulings.  In order to get this particular case on its way, the pending motions will be subject to the following outcomes:

1.  Plaintiffs' Motion to File First Amended Complaint will be granted, but their counsel shall be required to file a substitute to the one attached to the motion showing, among other things, the basis for subject matter and personal jurisdiction, as well as venue, in this Court. In the event Plaintiffs continue to pursue recovery based on fraud and/or mistake, they shall set

forth with particularity the circumstances so constituting these averments.

        2.  USAA's Motions to Dismiss based on Fed. R. Civ. P. 9(b) and 12(b)(6) will be denied.

    A separate order shall be entered.  Decided this the 24th day of August, 2006.

s/ *L. T. Senter, Jr.*

L. T. Senter, Jr.
Senior Judge